United States District Court
Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MELISSA MEYER,<br><br>          Plaintiff,<br><br>   v.<br><br>CREDIT MANAGEMENT, LP,<br><br>          Defendant. | Case No.: 12-cv-04842 JSC<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Dkt. No. 9)** |

Plaintiff alleges that Defendant violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 et seq., and the Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act"), Cal. Civ.Code §§ 1788 et seq., which among other things, prohibits debt collectors from falsely reporting a debt. Now pending before the Court is Defendant's motion for summary judgment on all of Plaintiff's claims. (Dkt. No. 9.) After carefully considering the pleadings and evidence submitted by the parties, and having had the benefit of oral argument on February 7, 2013, the Court DENIES Defendants' motion for summary judgment.[1]

---

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c).

**FACTUAL & PROCEDURAL HISTORY**

This case arises out of a debt allegedly owed by Plaintiff, to Comcast, for the amount of $267.61. After receiving no payment from Plaintiff, Comcast assigned this debt to Defendant Credit Management, LP ("Defendant" or "CMI"), for collection. Attempts at said collection, and negative impacts on Plaintiff's credit therefrom, provide the foundation for Plaintiff's Complaint.

### I. Summary Judgment Evidence

Plaintiff Melissa Meyer alleges that in or around November 2011 she returned equipment rented from Comcast, pursuant to an "Equipment User Agreement." (Dkt. No. 13-3 at ¶ 2.) Plaintiff further alleges that upon returning the equipment, she was informed that she did not owe a balance to Comcast. (*Id.*) Also in November 2011, Plaintiff learned that a creditor other than Defendant was attempting to collect a debt from Plaintiff on Comcast's behalf but, upon contacting Comcast, Plaintiff was informed that she did not owe Comcast any money and that Comcast would rectify the error. (*Id.* at ¶ 3.) Around this same time, Plaintiff received a billing statement from Comcast dated November 10, 2011 reflecting a "Total Amount Due" of $267.61.[2] (Dkt. No. 13-2 at 2.) On December 19, 2011, Defendant was assigned a debt from Comcast, in the amount of $267.61, to be collected from Plaintiff. (Dkt. Nos. 9-1 ¶ 3, 10 at 2; *see also* Dkt. No. 13-2 at 4 (Plaintiff's submitted credit report shows that the debt was placed with CMI for collection on December 20, 2011)).

Plaintiff attests that she did not learn of any collection efforts by Defendant until June 19, 2012, when she obtained a credit report from Trans Union. (Dkt. No. 13-3 at ¶¶ 4, 6.) On June 25, 2012, Plaintiff informed her attorney, Todd Friedman, that she had just learned of Defendant's attempted collection. (Dkt. Nos. 13-3 at ¶ 5, 13-4 at ¶ 5.)

Defendant does not dispute the above; instead it offers evidence that on December 21, 2011, it sent a standardized validation letter conforming to 15 U.S.C. § 1692g(a) to Plaintiff

---

[2] Plaintiff interprets this billing statement as "indicating that she has a credit of $7.66 in her account with [Comcast]" (Dkt. No. 13 at 6:1-2) even though the $7.66 credit appears under the heading "Taxes, Surcharges & Fees" (Dkt. No. 13-2 at 2) and does not represent the total balance of Plaintiff's account.

2

informing her that she owed $267.61 to Comcast and that the debt would be assumed valid unless disputed by Plaintiff within 30 days of receipt of the notice.[3] (Dkt. No. 9-1 ¶ 5; a sample of such a letter is attached to Dkt. No. 9 as Ex. B.)  Defendant further alleges that it sent a follow-up validation letter, indicating that Plaintiff's account remained past due, to Plaintiff on or around March 5, 2012.[4]  (Dkt. No. 9-1 at ¶ 9; a sample of such a letter is attached to Dkt. No. 9 as Ex. C.)  According to Defendant's "Account Notes" regarding the debt at issue, between December 27, 2011 and July 14, 2012 Defendant attempted to contact Plaintiff over 100 times, including approximately six left messages.  (Dkt. Nos. 9-1 ¶ 7-8; 10 [Ex. A] at 3-8.)  Despite those attempts, Defendant "has no record – oral, written or otherwise – of Plaintiff ever disputing the Debt."  (Dkt. No. 9-1 ¶ 11.)

## II. Procedural Background

On July 30, 2012, Plaintiff filed suit in the Superior Court of California for the County of Alameda for violation of the Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code § 1788, *et seq*. ("RFDCPA") and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*., ("FDCPA").  (Dkt. No. 13-2 at 6.)  Plaintiff brings two causes of action, one under each Act, claiming that Defendant (a) falsely represented the character, amount, or legal status of Plaintiff's debt, (b) used false representations and deceptive practices in connection with collection of an alleged debt from Plaintiff, and (c) communicated or threatened to communicate credit information which is known or which should be known to be false in violation of Sections 1692e(2)(A), (10), and (8), respectively.  (Dkt. No. 1-1 at ¶ 9.) On September 14, 2012, Defendant removed this suit to federal court because Plaintiff's second cause of action is brought under federal law.  (Dkt. No. 1-1at 2.)  Defendant now moves for early summary judgment on both of Plaintiff's causes of action.

---

[3] Defendant claims that it sent the validation notice to Plaintiff at her address on Hacienda Drive in Dublin, CA, but that, pursuant to a mail-forwarding request made to the USPS by Plaintiff, the validation notice was actually sent to an address on Kiwi Commons in Livermore, CA.  (Dkt. No. 9-1 ¶ 5; Dkt. No. 10 [Ex. A] at 2, 3.)

[4] The follow-up letter was sent directly to Plaintiff's address on Kiwi Commons in Livermore. (Dkt. No. 9-1 ¶ 9; Dkt. No. 10 [Ex. A] at 4.)

# LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(a). The Court must draw "all reasonable inferences [and] resolve all factual conflicts in favor of the non-moving party." *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1138 (9th Cir. 2004). A fact is material if it "might affect the outcome of the suit under the governing law," and an issue is genuine if "a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). There can be "no genuine issue as to any material fact" when the moving party shows "a complete failure of proof concerning an essential element of the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Defendant, as the moving party, has the burden of producing evidence negating an essential element of each claim on which it seeks judgment or showing that Plaintiff cannot produce evidence sufficient to satisfy her burden of proof at trial. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Once Defendant meets that burden, Plaintiff, as the non-moving party, must show that a material factual dispute exists. *California v. Campbell*, 138 F.3d 772, 780 (9th Cir.1998). Allegations alone are not sufficient to meet Plaintiff's burden; instead, Plaintiff must submit admissible evidence. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001). Plaintiff's evidence must be such that a reasonable trier of fact could return a verdict in Plaintiff's favor, *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995), and the Court "is not required to comb the record to find some reason to deny a motion for summary judgment," *Forsberg v. Pac. Nw. Bell Tel. Co.*, 840 F.2d 1409, 1418 (9th Cir. 1988).

# DISCUSSION

Defendant claims entitlement to summary judgment for three reasons: (1) Plaintiff's evidence establishes that she in fact owed a debt to Comcast; (2) Plaintiff's failure to dispute the instant debt within 30 days of receiving notice of its existence allowed Defendant to properly assume its validity under 15 U.S.C. § 1692g(a)(3) and thus its actions were lawful;

and (3) even assuming Plaintiff disputed the debt in a timely fashion, "any violation of the FDCPA or RFDCPA was unintentional and was the result of a bona fide error because [Defendant] maintains procedures 'reasonably adapted' to avoid such reasons." (Dkt. No. 9 at 2:17-19.)

## I. The Evidence is Sufficient to Find that Plaintiff did not owe a Debt to Comcast

"The FDCPA bars the use of any false, deceptive, or misleading representation in connection with the collection of any debt." *Cruz v. Int'l Collection Corp.*, 673 F.3d 991, 997 (9th Cir. 2012) (citing 15 U.S.C. § 1692e). It "is a strict liability statute; there is no mental state required to violate it." *Id.*

Plaintiff's barebones Complaint appears to allege that Defendant violated the FDCPA (and thus RFDCPA) because she did not in fact owe Comcast any money; in other words, Defendant's representation that she owed Comcast money was false. Her claims are brought pursuant to three subsections of 15 U.S.C. § 1692e, which state:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.…the following conduct is a violation of this section:
> …
> (2) The false representation of—(A) the character, amount, or legal status of any debt;
> …
> (8) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.
> …
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

(Dkt. No. 13-2 at 8.)

In its Reply, Defendant argues that Plaintiff' claims fail as a matter of law because the billing statement Plaintiff attached to her declaration in opposition establishes that she owed Comcast the debt reported by Defendant; that is, that Defendant "did not falsely represent the legal status of the debt" to the credit reporting agency. (Dkt. No. 15 at 4.) While the billing

5

statement establishes that Comcast billed Plaintiff $267.61, drawing all reasonable inferences in Plaintiff's favor, the record supports a finding that the bill was inaccurate; namely, that Plaintiff did not owe Comcast any money. Plaintiff attests that in or around November 2011 "[Comcast] informed me that I do not owe [Comcast] a balance." (Dkt. No. 13-3 ¶ 2.) That same month Comcast again informed Plaintiff she did not owe Comcast any money. (*Id.* at ¶ 3.) And Plaintiff swears under oath that she disputes that she owes Comcast any money. (*Id.* at ¶ 7.) Accordingly, summary judgment on the ground that the evidence establishes that Plaintiff owed a debt to Comcast must be denied.

## II. Plaintiff's Failure to Challenge the Debt

Defendant also argues that Plaintiff's claims fail as a matter of law because she did not dispute the validity of the Comcast debt with Defendant within 30 days of receiving notice from Defendant of the Debt. This argument, too, fails under the specific circumstances alleged here.

Section 1692g "provides a mechanism by which consumers may validate the debt asserted by the debt collector." *Palmer v. I.C. Sys., Inc.*, No. 04-03237, 2005 WL 300187, at *4 (N.D. Cal. Nov. 8, 2005). Specifically, section 1692g(a) requires a debt collector to send a consumer a written notice containing:

> (1) the amount of the debt;
>
> (2) the name of the creditor to whom the debt is owed;
>
> (3) *a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector*;
>
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
>
> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a) (emphasis added). Section 1692g(b) "sets forth the requirement that, should the consumer dispute the debt in writing within 30 days of the initial communication or request the name and address of the original creditor, the debt collector must cease collection of the debt or any disputed amount." *Palmer*, 2005 WL 300187 at *4. Defendant contends that because the evidence is undisputed that it sent Plaintiff the required 1692g notice on or about December 2, 2011, and it is also conceded that Plaintiff never disputed the Debt, Defendant was permitted to assume the Debt valid pursuant to section 1692g(a)(3) and "therefore CMI's collection activities were lawful." (Dkt. No. 9 at 11:2-3.) In other words, disputing a debt pursuant to section 1692g is a prerequisite to filing a suit alleging a violation of section 1692a.

The plain language of the FDCRA does not appear to require a consumer to dispute a debt with a debt collector before initiating suit. In *Burdett v. Harrah's Kansas Casino Corp.*, 294 F.Supp.2d 1215 (D. Kan. 2003), for example, the debt collector argued, as does Defendant here, that it had no reason to believe the debts it was attempting to collect were illegal because the plaintiff had never disputed them or requested validation as allowed under section 1692g. *Id.* at 1227. The district court disagreed: "[Defendant] is not entitled to summary judgment…just because [Plaintiff] did not dispute the validity or request verification of the debts." *Id.*

Several other courts, however, have held that disputing a debt under 1692g is a prerequisite to filing suit under 1692e, where, as here, a plaintiff's suit is based solely on her allegation that the debt is invalid. *See, e.g., Reed v. AFNI, Inc*., No. 09-CV-459, 2011 WL 112430 (D. Utah Jan. 13, 2011); *Daniel v. Asset Acceptance L.L.C.,* No. 06-15600, 2007 WL 3124640 (E.D. Mich. Oct. 23, 2007); *Bleich v. Revenue Maximization Group, Inc.,* 233 F.Supp.2d 496 (E.D.N.Y. 2002); *Lindbergh v. Transworld Sys., Inc.,* 846 F. Supp. 175, 179 (D. Conn. 1994). As a court in this District explained:

> Nevertheless, subsection (a)[of 1692g], which sets forth the validation notice that debt collectors are required to provide either in the first communication with the consumer or within 5 days after initial contact, states that the debt collector must notify the consumer "that unless the consumer, within thirty days

7

after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector." This demonstrates that, absent a dispute, the debt collector is allowed to assume the debt is valid. While this subsection does not create a standing requirement that consumers dispute the debt in writing or otherwise within thirty days, where, as here, it is undisputed that the consumer never contacted the collector to contest the debt before the final collection attempt, plaintiff cannot assert a cause of action under the FDCPA solely based upon the debt collector's attempt to collect an invalid debt.

*Palmer*, 2005 WL 3001877 at *5. No Court of Appeals has opined on this issue. This Court need not "pick sides," however, because even assuming that the Court agrees with this latter line of cases, all of them are distinguishable from the present case for a fundamental reason: Plaintiff attests under oath that she never received any of the notices required by section 1692g; indeed, she first learned that Defendant was attempting to collect a debt from her when she received her credit report in June 2012.

Defendant responds that whether Plaintiff actually received the 1692g notices is immaterial; so long as Defendant sent the notices and Plaintiff did not dispute the debt it is entitled to presume that the debt is valid and therefore is insulated from liability. The cases upon which it relies, however, are all distinguishable because they address whether a debt collector can be liable under section 1692g for failing to provide the required written notice when in fact the collector *sent* the notice but it was not, for whatever reason, received. Since section 1692g(a)(3) only requires that the notice be sent, and not that the debt collector ensure it has been received, these courts hold that the debt collector cannot be liable under section 1692g(a)(3) even if the consumer never received the written notice. *See, e.g., Mahon v. Credit Bureau of Placer County Inc.*, 171 F.3d 1197, 1201-02 (9th Cir. 1999); *Taylor v. Quall*, 471 F.Supp.2d 1053, 1061 (C.D. Cal. 2007); *Gray v. Four Oak Court Ass'n*, 580 F.Supp.2d 883, 888 (D. Minn. 2008); *Van Westrien v. Americontinental Collection Corp.*, 94 F.Supp.2d 1087, 1097-98 (D. Or. 2000).

The question here, however, is different: whether a consumer is foreclosed from bringing suit under section 1692e, as a result of failing to dispute the debt, when the consumer

never received notice of the debt nor of the procedure for disputing the debt. Defendant does not cite any case that so holds and has not given the Court any reason for holding so here. Accordingly, in light of Plaintiff's assertion under oath that she never received Defendant's written notice, Defendant's undisputed evidence that it sent the required 1692g notice does not defeat Plaintiff's section 1692e claims at this juncture.

### III. Defendant's Bona Fide Error Defense

Defendant also argues that even if the debt was invalid, "any violation of the FDCPA or RFDCPA by CMI was unintentional and was the result of a bona fide error because CMI maintains procedures 'reasonably adapted' to avoid such error." (Dkt. No. 9 at 11:5-8.) 15 U.S.C. § 1692k(c) provides for a "bona fide error" defense:

> A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

*Id.* "The bona fide error defense is an affirmative defense, for which the debt collector has the burden of proof." *Reichert v. Nat'l Credit Sys., Inc.*, 531 F.3d 1002, 1006 (9th Cir. 2008) (internal quotations and citations omitted).

To establish that a violation of the FDCPA was an unintentional bona fide error, a debt collector must show that its reliance on a creditor's representation was reasonable. *Clark v. Capital Credit & Collection Services, Inc.*, 460 F.3d 1162, 1177 (9th Cir. 2006) ("if a debt collector reasonably relies on the debt reported by the creditor, the debt collector will not be liable for any errors. On the other hand, the bona fide error defense will not shield a debt collector whose reliance on the creditor's representation is unreasonable."). Determining whether a debt collector maintains sufficient procedures to avoid errors "involves a two-step inquiry: first, whether the debt collector 'maintained'-*i.e.,* actually employed or implemented-procedures to avoid errors; and, second, whether the procedures were 'reasonably adapted' to avoid the specific error at issue." *Reichert*, 531 F.3d at 1006 (internal quotations and citations omitted); *see also McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 948

9

(9th Cir. 2011) ("to qualify for the bona fide error defense, the defendant must prove that (1) it violated the FDCPA unintentionally; (2) the violation resulted from a bona fide error; and (3) it maintained procedures reasonably adapted to avoid the violation.").

Here, despite Defendant's description of their policies and procedures for handling disputed accounts, and their evidence submitted to support the same, Defendant has failed to meet its burden. First, Defendant has offered no evidence demonstrating that its reliance on Comcast's debt assignment was reasonable. Proof of such is not an especially heavy burden—*see, e.g., Turner v. J.V.D.B. & Assocs., Inc.*, 330 F.3d 991, 996 (7th Cir. 2003) (suggesting that one "reasonable preventive measure[]" to avoid mistakes is "an agreement with ... creditor-clients that debts are current")—but it is also not negligible. *Reichert*, 531 F.3d at 1007 ("[t]he fact that the creditor provided accurate information in the past cannot, in and of itself, establish that reliance in the present case was reasonable").

Likewise, Defendant has offered insufficient evidence that its policies and procedures are "reasonably adapted to avoid *the specific error at issue*." *McCollough,* 637 F.3d at 948 (internal quotations and citations omitted) (emphasis added). While Defendant describes its policies regarding disputed accounts it does not identify any procedures that are intended to prevent the specific violations which Plaintiff claims; namely, reporting false debts in the first instance. While Defendant may be able to meet its burden on this issue as a matter of law, it has not yet done so. Summary judgment must be denied.

**IV. Plaintiff's Oral 56(d) Request**

At oral argument, and for the first time, Plaintiff requested that the motion for summary judgment be denied under Rule 56(d) (formerly Rule 56(f)) to allow both parties to conduct discovery. In particular, Plaintiff seeks third-party discovery of Comcast to determine if the debt is valid. Plaintiff's belated request fails to comply with Rule 56(d)'s requirements and thus must be denied.

Rule 56(d) states that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may" take various actions to allow for such discovery; the rule is intended to prevent the opposing party

10

from being "railroaded" by a premature motion for summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986). However, in order to secure such a continuance "[a] party…must identify by affidavit the specific facts that further discovery would reveal, and explain why those facts would preclude summary judgment." *Tatum v. City & County of San Francisco*, 441 F.3d 1090, 1100 (9th Cir. 2006); *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 966 n.3 (9th Cir. 2009) ("Rule 56(f) requires a party seeking postponement of a summary judgment motion to show how additional discovery would preclude summary judgment and why it cannot immediately provide specific facts demonstrating a genuine issue of material fact.") (internal quotations and citations omitted).

Plaintiff's request fails to satisfy Rule 56(d). First, the required declaration was never filed. Second, the discovery Plaintiff seeks—discovery of non-party Comcast regarding the validity of the debt—would not preclude summary judgment. In deciding (and denying) Defendant's motion for summary judgment, the Court has accepted Plaintiff's assertion under oath that she does not owe Comcast any debt. Discovery for the purposes of defeating summary judgment is therefore unnecessary.

## CONCLUSION

For the reasons explained above, Defendant's early motion for summary judgment—brought even before the exchange of initial disclosures—is DENIED. The Court notes, however, that the record suggests that Plaintiff and her counsel may have had a misapprehension of the facts when they filed suit. Plaintiff's memorandum in opposition to summary judgment states that in November 2011 "Plaintiff received a billing statement from Defendant indicating that she has a credit of $7.66 in her account with Defendant." (Dkt. No. 13 at 6.) The billing statement on its face says no such thing; it unambiguously states that she had a prior unpaid balance and when her credits are deducted from her unpaid balance she owes precisely the amount Defendant sought to collect. Further, Plaintiff moved (belatedly) under Rule 56(d) for discovery of non-party Comcast to determine if the Debt is valid. Such an inquiry, however, should have occurred before this lawsuit was filed and Plaintiff attested that the Debt is not valid. It should not be difficult for Plaintiff to review the Comcast bill

issued just prior to her final bill, compare it to her final bill, determine if she made any payments in the meantime, and thus know whether the Debt is valid. The Court thus expects that Plaintiff and her counsel will not continue with this lawsuit unless they have a good faith belief, after reasonable investigation, that she did not owe the Debt.

This Order disposes of Docket No. 9.

**IT IS SO ORDERED.**

Dated: February 13, 2013

_____
JACQUELINE SCOTT CORLEY
UNITED STATES MAGISTRATE JUDGE